IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS,
AUSTIN DIVISION

| | | |
|---|---|---|
| B.W., a minor, by next friends | § | |
| M.W. and B.W. | § | |
| Formerly know herein as JON AISD DOE | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. 1:20-cv-00750-LY |
| | § | |
| AUSTIN INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**<u>DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FOURTH AMENDED COMPLAINT</u>**

Christopher B. Gilbert
**THOMPSON & HORTON LLP**
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone:    (713) 554-6744
Fax:             (713) 583-7698
cgilbert@thompsonhorton.com

Attorneys for Defendant Austin Independent
School District

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

I.    OVERVIEW ...................................................................................................1

II.   STANDARD OF REVIEW ...........................................................................3

III.  ARGUMENT AND AUTHORITIES ............................................................4

      A.    Plaintiff has failed to plead facts that show that any deprivation of his First or Fourteenth Amendment rights occurred in accordance with official District policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*............................................................4

      B.    Plaintiff still fails to plead facts that would show a valid claim for First Amendment retaliation by a non-employee...........................................................12

      C.    Plaintiff cannot allege that he was deprived of a constitutional right to an education, under either the United States of the Texas Constitution ...................14

      D.    Plaintiffs' Equal Protection Act claim fails as a matter of law ...........................15

      E.    Plaintiff was provided procedural due process by the District. ...........................17

      F.    Plaintiff's race and religion claims fail under any theory, because he has not alleged sufficient facts to suggest a plausible claim that any actions taken against him were motivated by his race or religion ...............................................18

VI.   CONCLUSION AND PRAYER ...................................................................20

# TABLE OF AUTHORITIES

**Page**

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ............................................................2, 3, 5, 6

*B.A.B. v. Board of Educ. of the City of St. Louis*, 698 F.3d 1037 (8th Cir. 2012) ..........................6

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ..............................................11

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ....................................3

*Barnes v. Symeonides*, 44 F.3d 1005, 1995 WL 10518 (5th Cir. 1995) ........................14

*Barrow v. Greenville ISD*, 480 F.3d 377 (5th Cir. 2007) ........................................8

*Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997) ..........................11

*Beeler v. Rounsavall*, 328 F.3d 813 (5th Cir. 2003) ........................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................3, 6, 9, 17, 19

*Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir. 1984) ..............................7, 9

*Blackburn v. City of Marshall*, 42 F.3d 925 (5th Cir. 1995) ......................................3

*Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397 (1997) ..........................4

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011) ..............................14

*Brinsdon v. McAllen ISD*, 863 F.3d 338 (5th Cir. 2017) ........................................13

*Brown v. Houston ISD*, 763 F. Supp. 905 (S.D. Tex. 1991),
    *aff'd*, 957 F.2d 866 (5th Cir. 1992) ..............................4

*Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001) ..............................11

*Cheathon v. Brinkley*, 822 F. Supp. 1241 (M.D. La. 1993) ..............................17

*City of Canton v. Harris*, 489 U.S. 378 (1989) ..............................11

*Collins v. City of Harker Heights, Texas,* 112 S. Ct. 1061 (1992) ..............................4

*Connick v. Thompson*, 563 U.S. 51 (2011) ..............................11

*Coon v. Ledbetter,* 780 F.2d 1158 (5th Cir. 1986) ..............................10

*Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) ..............................16

**TABLE OF AUTHORITIES** (cont.)

**Page**

*Cuvillier v. Taylor,* 503 F.3d 397 (5th Cir. 2007)..........................................................3

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)..........................................20

*Day v. South Park ISD*, 768 F.2d 696 (5th Cir. 1985).................................................14

*Dixon v. University of Toledo*, 702 F.3d 269 (6th Cir. 2012).......................................16

*Doe v. Hillsboro ISD,* 113 F.3d 1412 (5th Cir. 1997) ...................................................4

*Estate of Barnwell v. Watson*, 880 F.3d 998 (8th Cir. 2018)......................................20

*Fennell v. Marion ISD*, 804 F.3d 398 (5th Cir. 2015) .............................................9, 12

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993)........................3

*Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227 (5th Cir. 2012)..........15, 16

*Gold v. City of Miami,* 151 F.3d 1346 (11th Cir. 1998) ...............................................11

*Goss v. Lopez,* 419 U.S. 565 (1975) ............................................................................17

*Gray v. City of Roswell*, 486 Fed.Appx. 798 (11th Cir. 2012) ......................................6

*Hawks v. City of Pontiac*, 874 F.2d 347 (6th Cir. 1989)..............................................17

*Jeffrey v. Bd. of Trustees of Bells ISD*, 261 F. Supp. 2d 719 (E.D. Tex. 2003),
     *aff'd,* 96 F. App'x 248 (5th Cir. 2004)...............................................................15

*Jett v. Dallas ISD,* 7 F.3d 1241 (5th Cir. 1993) .......................................................5, 8

*Johnson v. City of Wakefield*, 483 Fed.Appx. 256 (6th Cir. 2012)................................6

*Jones v. Brown*, 300 F. Supp. 2d 674 (N.D. Ind. 2003)...............................................14

*Kean v. Henry*, 2013 WL 1802632 (3d Cir. 2013) ........................................................6

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002)..........................................................13

*Leffall v. Dallas ISD*, 28 F.3d 521 (5th Cir. 1994) .......................................................3

*Linzy v. Cedar Hill ISD*, 2001 WL 912649 (N.D. Tex. Aug. 8, 2001)...........................13

*Maislin v. Tennessee State Univ.*, 665 F. Supp. 2d 922 (M.D. Tenn. 2009)................20

## **TABLE OF AUTHORITIES** (cont.)

**Page**

*Monell v. City of New York*, 436 U.S. 658 (1978) ...........................................................................4

*Norman v. Apache Corp.*, 19 F.3d 1017 (5th Cir. 1994) .................................................................3

*Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838 (5th Cir. 2009)................................................10

*Plyler v. Doe*, 457 U.S. 202 (1982) ................................................................................................14

*Rathjen v. Litchfield*, 878 F.2d 836 (5th Cir. 1989)........................................................................14

*Rountree v. Dyson*, 892 F.3d 681 (5th Cir. 2018).........................................................................17

*Rozenfeld v. MTA Bus Co.*, 2015 WL 1174768 (S.D. N.Y. 2015).................................................19

*San Antonio ISD v. Rodriguez*, 411 U.S. 1 (1973)........................................................................14

*Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250 (6th Cir. 2006)....................................16

*Segal v. City of New York*, 459 F.3d 207 (2d Cir. 2006) ...............................................................10

*Shotz v. City of Plantation, Fla.*, 344 F.3d 1161 (11th Cir. 2003).................................................20

*Silva v. St. Anne Cath. Sch.*, 595 F. Supp. 2d 1171 (D. Kan. 2009) ............................................20

*Spiller v. City of Texas City*, 130 F.3d 162 (5th Cir. 1997) .............................................................5

*St. Louis v. Praprotnik*, 485 U.S. 112 (1988) .................................................................................8

*Stengel v. City of Columbus, Ohio*, 737 F. Supp. 1457 (S.D. Ohio 1988)....................................14

*Stock v. Texas Catholic Interscholastic League*, 364 F. Supp. 362 (N.D. Tex. 1973) .................15

*Sullivan v. Carrick*, 888 F.2d 1 (1st Cir. 1989)..............................................................................13

*Thomas v. Roberts*, 261 F.3d 1160 (11th Cir. 2001), *vacated and
    remanded for reconsideration*, 536 U.S. 953, *aff'd and reinstated*, 323 F.3d 950
    (11th Cir. 2003)........................................................................................................9, 11

*Unger v. City of Mentor*, 387 Fed.Appx. 589 (6th Cir. 2010) .......................................................7

*Washington v. Davis,* 426 U.S. 229 (1976)....................................................................................15

*Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) .......................................................9, 12

**TABLE OF AUTHORITIES** (cont.)

**Page**

*Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999), *decision clarified on reh'g,*
    186 F.3d 633 (5th Cir. 1999) ............................................................................15

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) .............................................................17

*Wood v. Strickland,* 420 U.S. 308 (1975) ....................................................................18

*World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747 (5th Cir. 2009) .......10

*Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989) .......................................................4

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS,
AUSTIN DIVISION

| | | |
|---|---|---|
| B.W., a minor, by next friends | § | |
| M.W. and B.W. | § | |
| Formerly know herein as JON AISD DOE | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. No. 1:20-cv-00750-LY |
| | § | |
| AUSTIN INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

TO THE JUDGE OF THE HONORABLE COURT:

Defendant Austin ISD moves to dismiss Plaintiff's Fourth Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6), and would respectfully show the Court as follows:

## I.    OVERVIEW

Plaintiff B.W. is a minor, high school student in Defendant Austin Independent School District ("AISD" or "District"), who has filed suit arguing primarily that he has been harassed, bullied, and retaliated against because he possesses conservative political views in what he asserts is a very liberal school district. After Plaintiff repled several times, and the District moved to dismiss each complaint, Magistrate Judge Lane recommended to this Court that Defendant's Motion to Dismiss be granted and that this case be dismissed. [*See* Doc. No. 24.] However, Plaintiff's original attorney was forced to withdraw from the case, and Plaintiff's new counsel sought permission to replead instead of filing Objections to the Recommendation. [*See* Doc. No. 33.] This Court granted permission to the Plaintiff to repead [Doc. No. 35], and Plaintiff filed his Third Amended Complaint on May 14, 2011 [*see* Doc. No. 36], and his corrected Fourth Amended Complaint on May 26, 2011.  [*See* Doc. No. 39.]

The Fourth Amended Complaint ("FAC"), while certainly longer than the previous pleadings, does not correct most of the pleading deficiencies raised in the Motion to Dismiss, and noted in the Magistrate's Recommendation. The FAC retains Plaintiff's primary First Amendment claims (although it drops his freedom of assembly claim), and his equal protection and procedural due process claims. The FAC drops his previous Fourteenth Amendment bodily integrity and substantive due process claims, and state law negligence claims, but adds a claim for a right to a public education. Most significantly, the FAC adds claims for race and religious discrimination/ harassment under Title VI/First Amendment, and Chapters 106 and 110 of the Texas Civil Practice & Remedies Code. Therefore, in his FAC, Plaintiff asserts the following claims:

1. Deprivation of First Amendment rights to free speech and religion, and right to publicly seek redress (FAC, ¶¶ 138-140);
2. Deprivation of a right to a public education (FAC, ¶¶ 141-142);
3. Deprivation of equal protection rights (Fourteenth Amendment) (FAC, ¶¶ 143-144);
4. Deprivation of procedural due process rights (FAC, ¶¶ 145-146);
5. Race discrimination/ harassment under Title VI (FAC, ¶¶ 149-152);
6. Religious discrimination/ harassment under Chapters 106 and 110 of the Texas Civil Practice & Remedies Code (FAC, ¶¶ 153-154).

Even after repleading *yet again*, while Plaintiff's FAC weaves an *even more* colorful story of a conservative student who has had several disagreements with his more liberal fellow students and teachers, it continues to be void of any allegations that the District actually *did* anything to Plaintiff as a result of his views or his voicing of his views. Plaintiff still does not allege that he was disciplined in any way, or that he was graded downward, as a result of expressing any viewpoints, of any kind, on anything. Perhaps in an effort to avoid being dismissed again, Plaintiff adds race and religion claims, but he doesn't plead any facts to support such naked allegations, or to suggest that any actions taken against him were motivated by anything other than his political beliefs. Because the Supreme Court has noted that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), Plaintiff's claims must be dismissed as a matter of law.

## II.    STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(b)(6)

Dismissal of a lawsuit on the pleadings pursuant to FED. R. CIV. P. 12(b)(6) is proper where there is either (1) lack of a cognizable theory of recovery or (2) the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Phrased a different way, "a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Leffall v. Dallas ISD*, 28 F.3d 521, 524 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). While the Court will accept the plaintiff's factual allegations as true, the factual allegations must exist: "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). In addition, what must be alleged are facts: "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

A court can dismiss a complaint for failure to state a claim if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide the plaintiff's grounds for entitlement to relief - including *factual* allegations that, when assumed to be true, raise a right to relief above the speculative level. *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007). "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Id*. (quoting *Twombly*).

### III.  <u>ARGUMENTS AND AUTHORITIES</u>

**A.    Plaintiff has failed to plead facts that show that any deprivation of his First or Fourteenth Amendment rights occurred in accordance with official District policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*.**

Plaintiff's FAC asserts claims against the District for violation of Plaintiff's rights to expression, religion, and public redress under the First Amendment and deprivation of his right to procedural due process rights and equal protection rights under the Fourteenth Amendment. (FAC, ¶¶ 138-146.)  Plaintiff's claims against the District are asserted, as they must be, pursuant to 42 U.S.C. § 1983.  To succeed on such a claim, Plaintiff must show that the District itself is liable for the violation. *See generally Collins v. City of Harker Heights, Texas,* 112 S. Ct. 1061, 1066 (1992). A governmental entity such as the District cannot be held liable under 42 U.S.C. § 1983 for an injury inflicted by its employees or agency based on a theory of vicarious liability or *respondeat superior* liability. *Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 402 (1997); *Doe v. Hillsboro ISD,* 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc). The Supreme Court set forth its standard on municipal liability in *Monell*:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694 (1978).

In order to state a constitutional claim against a public school district under § 1983, then, a plaintiff must demonstrate that the constitutional violation occurred in accordance with official government policy or firmly entrenched custom. *Brown v. Houston ISD*, 763 F. Supp. 905 (S.D. Tex. 1991), *aff'd*, 957 F.2d 866 (5th Cir. 1992); *Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989). The Fifth Circuit has noted that the plaintiff's description of the government's policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but

must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5ᵗʰ Cir. 1997). A school district may be held liable only if the constitutional injury was caused by an official policy or custom promulgated by government officials who have final policy making authority. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120-21 (1992). Under Texas law, the final policy-making authority for an independent school district rests with the school district's board of trustees. *Jett v. Dallas ISD,* 7 F.3d 1241, 1245 (5th Cir. 1993).

Plaintiff's deficiencies in his FAC are analogous to those identified by the Supreme Court in *Iqbal* itself. *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) was a lawsuit brought by a September 11 detainee against a number of defendants regarding his arrest and detention; however, the appeal only dealt with the claims asserted individually against John Ashcroft, the former United States Attorney General, and Robert Mueller, the Director of the FBI. The plaintiff alleged that Ashcroft and Mueller "each knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," naming Ashcroft as the "principal architect" of the policy, and Mueller as "instrumental in [its] adoption, promulgation, and implementation." *Id*. at 1944. The Supreme Court acknowledged that asserting a claim against a federal official under *Bivens* was the federal analog to suits against state official under 42 U.S.C. § 1983, and that in both cases the government or supervisory officials could not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, but could only be held liable for their own individual acts that violated the Constitution:

> In a § 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

*Id*. at 1948-49.

The Court then applied the pleading standards of Rule 8, as interpreted in *Twombly*, to the allegations made in the plaintiff's pleadings against Ashcroft and Mueller, noting that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court ruled that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'," and that a complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Id*. (citing *Twombly*, 550 U.S. at 555, 557). The Court then held that alleging that Ashcroft and Mueller "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," were conclusory allegations that did not meet the pleadings standards of Rule 8.

Numerous courts since *Twombly* and *Iqbal* have held that a plaintiff must plead specific facts to demonstrate the existence of a custom, policy or practice sufficient to establish liability under *Monell*, or risk having their claims against the governmental entity dismissed under Rule 12(b)(6). In *B.A.B. v. Board of Educ. of the City of St. Louis*, 698 F.3d 1037 (8th Cir. 2012), plaintiffs asserted various constitutional claims under § 1983 against their school district arising out of vaccinations to which they claimed they had not consented. The lower court dismissed the claims against the school district under *Iqbal*, "because plaintiffs' failure-to-train allegations merely recited elements of their causes of action and asserted legal conclusions without sufficient factual support to make the claims plausible." *Id*. at 1040. The Court of Appeals agreed and upheld the dismissal of the claims against the school district under Rule 12(b)(6). *Id*. at 1040-41; *see also Kean v. Henry*, 2013 WL 1802632 (3d Cir. 2013); *Gray v. City of Roswell*, 486 Fed.Appx. 798 (11th Cir. 2012); *Johnson v. City of Wakefield*, 483 Fed.Appx. 256 (6th Cir. 2012) (dismissing numerous constitutional retaliation claims under *Iqbal* because the plaintiff had not pled facts

showing a City policy or custom to retaliate sufficient to establish liability under *Monell*); *Unger v. City of Mentor*, 387 Fed.Appx. 589, 592 (6th Cir. 2010) (dismissing First Amendment claim against City that plaintiff was terminated for requesting reclassification so she could join a union, "[b]ecause Unger does not allege misconduct by the City itself or that a city policy or custom authorized Cooperrider's alleged misconduct…").

In his FAC, Plaintiff still does not allege (with one exception, discussed below) that the Austin ISD Board of Trustees had any involvement in what happened to him. He has not alleged that the Austin ISD Board of Trustees formally adopted any actual policies, regulations, bylaws, or ordinances that contributed to his injuries, nor that the Board permitted "persistent and widespread practices" or "practices that are permanent and well settled and deeply embedded traditional ways of carrying out policy." *Bennett v. City of Slidell,* 728 F.2d 762 768 (5th Cir. 1984). In fact, in his FAC he admits that the Board has adopted proper policies to address issues such as the bullying and harassment of students, both because of issues such as race or religion, and also on account of their speech. (*See*, *e.g*., FAC, ¶¶ 8, 21-25.)

After finally admitting in his FAC that the Board has adopted the proper policies, Plaintiff claims for the first time that the real problem is that the various AISD employees with whom he interacted did not follow those policies. (FAC, ¶ 137.) Plaintiff argues that despite the fact that the AISD Board of Trustees had adopted policies properly designed to prevent bullying and harassment, the District had an "actual practice and custom" of failing to follow its own policies regarding bullying and harassment. However, because Plaintiff alleges no facts in his FAC involving any other students[1] – or anything that would plausibly suggest that these kinds of things

---

[1] Although Plaintiff alleged in his Second Amended Complaint that he knew of another student who he claimed was "harassed" and "targeted" because that student supported the President, and that Plaintiff's original attorney had received calls from other educators and parents who claim they have been "targeted" and "bullied" because of "their support for the President of the United States," (*see* SAC, ¶ 23), those claims have all been dropped in the FAC.

happened to other AISD students – his "custom and practice" argument is literally the same thing as alleging that AISD employees failed to follow the law and the anti-harassment policies they admit were adopted by the AISD Board.  In *Jett v. Dallas ISD*, 7 F.3d 1241 (5th Cir. 1993), the Fifth Circuit analyzed the same "failure to follow" argument, and determined that it did not create new "policies" for purposes of Section 19893, nor did it delegate policymaking authority to the lower-level employee:

> *Praprotnik* similarly states that the authority to make municipal policy is necessarily the authority to make *final* policy.... When an official's discretionary decisions are constrained by policies not of that official's making, those policies, ***rather than the subordinate's departures from them***, are the act of the municipality, and that simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy.

*Id*. at 1247 (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127, 130 (1988)) (internal citations omitted; emphasis added.)   Likewise, in *Barrow v. Greenville ISD*, 480 F.3d 377 (5th Cir. 2007), the Fifth Circuit stressed that even where a lower-level employee's decisions were final and unreviewable, that employee was still not the policymaker and those decisions were not "policies" for purposes of Section 1983 liability, if those decisions were supposed to be following policies created by the school board:

> [A]n official whose discretionary decisions on a particular matter are final and unreviewable, meaning they can't be overturned, is constrained if another entity has ultimate power to guide that discretion, at least prescriptively, whether or not that power is exercised.

*Id*. at 382 (citing *Jett*, 7 F.3d at 1247).  Therefore, if as the Plaintiff emphasizes in his Fourth Amended Complaint the District has proper policies and the problem was that employees simply weren't following those policies, then that is fatal to the Plaintiff's Section 1983 claims.   That is a *respondeat superior* argument improper under *Monell*.

It is true that a government entity may also be held liable under Section 1983 for a "persistent, widespread practice of city officials or employees, which, although not authorized by

officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam). If this is what the Plaintiff is trying to allege, "[a]ctual or constructive knowledge of such a custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster*, 735 F.2d at 841; *see also Fennell v. Marion ISD*, 804 F.3d 398, 413 (5th Cir. 2015) ("Regardless of its form, the policymaker must have actual or constructive knowledge of the official policy or custom.") In addition to prior knowledge, the municipality must be recurrently faced with situations which are "so similar" to the facts of the instant case to satisfy the awareness requirement. *Thomas v. Roberts*, 261 F.3d 1160, 1174 (11th Cir. 2001), *vacated and remanded for reconsideration*, 536 U.S. 953, *aff'd and reinstated*, 323 F.3d 950 (11th Cir. 2003). Moreover, "[i]solated violations, are not the persistent, often repeated, constant violations, that constitute custom and policy" as required for municipal § 1983 liability. *Bennett*, 728 F.2d at 768 n.3.

In this case, however, the facts pled do not bear out that the District had a "custom and practice" of AISD employees ignoring its policies that was so common and well settled as to constitute a custom that fairly represents municipal policy; such allegations are "naked assertions devoid of further factual enhancement." *Twombly*, 550 U.S. at 557. There are still no factual allegations regarding any other students who were treated in similar fashion to the Plaintiff because AISD employees followed this alleged "custom and practice" of ignoring AISD policies. There are no factual allegations regarding other AISD employees who in fact did ignore AISD policies. But even if there were, Plaintiff has not alleged that these incidents were known to the AISD school board itself. As the Fifth Circuit has noted, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority" *Webster*, 735 F.2d at 841. Even after repleading *yet again*,

there are no factual allegations that any evidence of widespread issues (involving students other than the Plaintiff) was reported to or known by the AISD Board of Trustees.

Plaintiff does make one allegation that he filed a grievance that the Board heard and denied (FAC, ¶¶ 106-109), but he pleads no details about what that grievance alleged, what he told the Board during that grievance (other than a brief reference to "diversity of thought") that might have placed them on some notice of underlying problems, or why the Board denied the grievance[2] -- all concerns that the Magistrate discussed when dismissing the SAC.  (Doc. No. 24, pp. 3, 11-12.) The grievance took place on September 16, 2019 (*see* FAC, ¶ 106), so this means that the Board could not have "ratified" the one significant "death threat" that he identifies, because that threat took place in March of 2020, right as the school district was shutting down due to the COVID-19 pandemic (*id*. at ¶¶ 117-119), and the Board could not have ratified something that took place 6 months *after* the board hearing.

Plaintiff does appear to be alleging that the District failed to properly train and/or supervise its staff (*see*, *e.g*., FAC, ¶¶ 147-148), which presumably led to the constitutional violations against the Plaintiff, since "failure to train" is not a separate cause of action under Section 1983, but is simply one method for proving entity liability for the violation of an independent constitutional right.  *See, e.g*., *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.")  While "[t]here are 'limited circumstances' in which a local government will be held liable because it

---

[2] It is important that such facts be pled, because as the Fifth Circuit has noted, "[t]he theory of ratification, however, has been limited to "extreme factual situations." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009); *Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986)).  The Court went on to note that "unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom."  *Id.*

inadequately trained or supervised its employees, who then infringed upon a plaintiff's constitutional rights," *Thomas*, 261 F.3d at 1173 (citing *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998)), the scope of failure to train liability is a narrow one. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001). To make out a "failure to train" claim, the plaintiff must show three things:

> (1) the training or hiring procedures of the municipality's policymaker were inadequate;
> (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and
> (3) the inadequate hiring or training policy directly caused the plaintiff's injury.

*Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that a "failure to train" plaintiff must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. The failure to train must be an intentional choice, not a mere oversight. *Id.* at 387. Plainly, even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id*. at 391. To show deliberate indifference, a plaintiff generally must demonstrate a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51 (2011). In the absence of previous violations, a plaintiff must show the alleged violation was a "highly predictable consequence" of a failure to train. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 398 (1997) (citing *Canton v. Harris*, 489 U.S. 378, 390 (1989) ("[I]t may happen. . . that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."). Plaintiff here has not suggested any training that they believe the District should have provided to its employees – and certainly none that was legally

required.  His claim that the District "failed to train staff" is again just circuitous boilerplate allegations that the staff should not have violated his rights under the Constitution.

And the need for training must be obvious to the AISD Board of Trustees; as the Fifth Circuit has noted, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority" *Webster*, 735 F.2d at 841; *see also Fennell*, 804 F.3d at 413 ("Thus, even assuming the alleged customs, policies, and failures to train existed among Marion ISD employees, there is no evidence that the Board knew of this behavior or condoned it.") (internal citations omitted). In other words, any pattern of misconduct has to be significant enough to come to the attention of the school board, which then ignores the need for additional training, and that lack of training then causes the injury to the plaintiff.  But Plaintiff has alleged no facts that would suggest that a need for training was so obvious to the AISD Board of Trustees *prior to what happened to him* that municipal liability can be attributed to the District.  As such, even after repleading yet again, Plaintiff's allegations in his Fourth Amended Complaint are legally insufficient under the *Twombly-Iqbal* standard, and Plaintiff's First and Fourteenth Amendment claims brought under Section 1983 against the District should be dismissed under Rule 12(b)(6).

**B.    Plaintiff still fails to plead facts that would show a valid claim for First Amendment retaliation by a non-employee.**

Plaintiff's various First Amendment speech claims are all based on his primary allegation that the District retaliated against him for expressing his conservative political views.  In order to establish a First Amendment retaliation claim in a non-employment retaliation case, Plaintiff must prove the following:

(1)    that he was engaged in constitutionally protected activity;
(2)    that the Defendants' actions caused him to suffer an injury "that would chill a person of ordinary firmness from continuing to engage in that activity"; and
(3)    that the Defendants' actions were substantially motivated against his exercise of constitutionally-protected activity.

*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (setting out standard for First Amendment retaliation cases that do not involve an employment or other contractual relationship between the plaintiff and the governmental officials); *see also Brinsdon v. McAllen ISD*, 863 F.3d 338, 351 (5th Cir. 2017).

Plaintiff has failed to allege facts to show that the District's actions caused him to suffer an injury "that would chill a person of ordinary firmness from continuing to engage in that activity."   *Keenan*, 290 F.3d at 258; *see also Linzy v. Cedar Hill ISD*, 2001 WL 912649 at *2 (N.D. Tex. Aug. 8, 2001); *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989) ("To show a First Amendment violation in this context [plaintiff] must allege that his speech was in fact chilled or intimidated.").  In *Linzy*, a parent claimed that the school board had authorized and paid for the superintendent to file a defamation lawsuit against the parent in retaliation for a number of letters he had written to Congress and outside state agencies accusing the school district of engaging in illegal activities.  The Northern District of Texas dismissed the parent's First Amendment claim against the school district, on the grounds that the lawsuit did not actually chill or intimidate the parent's speech; he kept on writing letters to various government officials about the perceived illegal activities of the school district.  2001 WL 912649 at *3.  Likewise, there are no allegations here that anything the District supposedly did actually chilled or intimidated Plaintiff's speech; indeed, he seems to take pride in continuing his fight against the District.  Therefore, he cannot satisfy the second element of a free speech claim under *Keenan*, and his claim must be dismissed.

Plaintiff's public redress claim (FAC, ¶ 140) is entirely derivative of his free speech retaliation claim.  He does not allege that he was prevented in some way from seeking "redress" from the District (he admits that he filed grievances and was allowed to take them all the way to the school board).  The right to petition does not create a duty in the school board to agree with the Plaintiff, or to even respond:

> [T]he First Amendment right to petition the government for a redress of grievances protects a person's right to complain to the government that the government has wronged him, but it does not require that a government official respond to the grievance. Once Mr. Jones was provided with a hearing, others do not become liable to him for errors which may have occurred during that hearing merely because he notified them of the alleged errors.

*Jones v. Brown*, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003); *see also Stengel v. City of Columbus, Ohio*, 737 F. Supp. 1457, 1459 (S.D. Ohio 1988) ("The right to petition government does not create in the government a corresponding duty to act.")  Nor does the fact that Plaintiff's speech was made as formal grievances elevate it to the level of protected speech, under either the free speech or the petition clause.  *See Day v. South Park ISD*, 768 F.2d 696, 703 (5th Cir. 1985); *Rathjen v. Litchfield*, 878 F.2d 836, 842 (5th Cir. 1989) (question of whether a prior lawsuit was a matter of public or private concern "is no different where the act which allegedly gave rise to the retaliation claim is the filing of a grievance or a lawsuit."); *see also Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011). Therefore, the mere fact that Plaintiff filed a grievance is not protected by the First Amendment's speech or petition clauses.  For the foregoing reasons, Plaintiff's First Amendment claims should be dismissed as a matter of law.

C.    **Plaintiff cannot allege that he was deprived of a constitutional right to an education, under either the United States or the Texas Constitution.**

Plaintiff alleges that he was deprived of a generalized "right to an education."  (*See* FAC, ¶¶ 141-142.)  The United States Supreme Court has rejected the idea that there is such a generalized "right to an education":  "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."  *San Antonio ISD v. Rodriguez*, 411 U.S. 1, 35 (1973).  *See also Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution.").  In *Barnes v. Symeonides*, 44 F.3d 1005, 1995 WL 10518 (5th Cir. 1995), a student who was dropped from his university after failing to pay his tuition was told he could not reapply

until he paid his indebtedness; the student claimed he had a vested property right in his education, but the Fifth Circuit disagreed: "Education-particularly post-graduate or professional education-is not a right afforded either explicit or implicit protection under the Constitution." *Id*. at *2; *see also Stock v. Texas Catholic Interscholastic League*, 364 F. Supp. 362, 365 (N.D. Tex. 1973) ("The only plausible argument is that playing football is a part of one's education and that education is a Constitutionally guaranteed right. This argument fails, however, in view of the Supreme Court's opinion in [*Rodriguez*].")  In *Jeffrey v. Bd. of Trustees of Bells ISD*, 261 F. Supp. 2d 719, 725 (E.D. Tex. 2003), *aff'd*, 96 F. App'x 248 (5th Cir. 2004), the Eastern District noted that not only was a generalized constitutional right to an education not provided by the United States Constitution, it was not provided by the Texas Constitution, either.

**D.     Plaintiff's Equal Protection Act claim fails as a matter of law.**

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999), *decision clarified on reh'g,* 186 F.3d 633 (5th Cir. 1999) (citing *Washington v. Davis,* 426 U.S. 229, 247–48 (1976)).  Plaintiff's Equal Protection Clause claim is curious; Plaintiff does not appear to be basing it on his race (although he asserts a race claim under Title VI, see below).  Instead, he claims that it is based on his "public comments about his political and religious beliefs."  (FAC, ¶ 144.)  To the extent that Plaintiff is asserting an Equal Protection claim that is derivative of his First Amendment claim – that the District somehow discriminated against him because of his allegedly "disfavored" political views – "[t]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) "a state actor intentionally discriminated against [him] because of membership in a protected class, or (b) he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't*

*of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted). The "threshold element of an equal protection claim is disparate treatment." *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006); *see also Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003) ("As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently.")

Plaintiff's claim fails because he has not alleged any facts that would support his extremely vague allegations that the District somehow favors those with "liberal" views that differ from his. In *Dixon v. University of Toledo*, 702 F.3d 269 (6th Cir. 2012), the interim Associate Vice President for Human Resources at the University was terminated after she wrote an op-od column in a local newspaper that rejected a comparison between the civil-rights movement and the gay-rights movement.  Plaintiff argued that her termination was retaliation for her expression of "a 'less favored' viewpoint—one grounded in her strong Christian faith no less" on the issues of civil rights and homosexuality, and therefore violated *both* her First Amendment *and* her Equal Protection rights.  *Id*. at 274, 278.  The Court rejected the Equal Protection claim, because the plaintiff could not show that she was treated differently than other similarly-situated individuals:

> Although Dixon recites this standard in her argument, she has failed to produce sufficient evidence in support of her equal-protection claim.…Dixon has not shown that the individuals she argues were allowed to engage in public speech on the issue of LGBT rights and protections without penalty—Jacobs and Vice Provost Carol Bresnahan—are similarly situated.

*Id.* at 278–79; *see also Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365 (6th Cir. 2011).

Plaintiff does suggest that "he was a victim of discrimination as a class-of-one…." (FAC, ¶ 144), but he fails to allege facts that would show that he was intentionally treated differently from others similarly situated. As the Fifth Circuit held:

> Alternatively, Rountree's [class-of-one] equal-protection claim fails because he did not sufficiently allege that he has been treated differently from others similarly situated. His complaint generally alleges that other similarly situated individuals were treated differently, but he points to no specific person or persons and provides no

specifics as to their violations. Though we take factual allegations as true at the Federal Rule of Civil Procedure 12(b)(6) stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal.*...An allegation that others are treated differently, without more, is merely a legal conclusion that we are not required to credit. Rountree's equal protection claim fails.

*Rountree v. Dyson*, 892 F.3d 681, 685 (5th Cir. 2018); *see also Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). Although Plaintiff's FAC contains many colorful allegations about his own political views and how he believes he was mistreated because of them, it is entirely void of factual allegations about other similarly-situated students who held different (presumably liberal) views but were therefore treated differently than Plaintiff. Like in *Rountree*, he alleges conclusorily that "he was treated differently than other students similarly situated because of his political, religious and their own racial stereotypes" (FAC, ¶ 144), but he fails to identify any such liberal students who engaged in the same kind of speech that Plaintiff did. Such allegations are simply "naked assertions devoid of further factual enhancement," *Twombley*, 550 U.S. at 557, and as such, Plaintiff's derivative Equal Protection claim must be dismissed as a matter of law.

**E.    Plaintiff was provided procedural due process by the District.**

Plaintiff's procedural due process claim is curious, considering that he admits that he and his parents filed various grievances (FAC, ¶ 70, 90, 93), at least one of which was eventually heard by the school board. (*Id.* at ¶ 106.) While students must be afforded notice and a right to be heard before they may be suspended from school for a lengthy or indefinite period of time, *see Goss v. Lopez,* 419 U.S. 565, 582–83 (1975), this is not a student discipline case: Plaintiff does not allege that he was ever actually disciplined for anything. While Plaintiff clearly did not like the results of his grievance process, it is axiomatic that due process guarantees a fair process, not specific results. *See*, *e.g.*, *Hawks v. City of Pontiac*, 874 F.2d 347, 350 (6th Cir. 1989) ("Procedural due process requires not a certain outcome but rather state procedures to remedy legitimate grievances."); *Cheathon v. Brinkley*, 822 F. Supp. 1241, 1243 n.4 (M.D. La. 1993). To the extent

that Plaintiff is complaining that the Austin ISD Board of Trustees made an unwise decision, the

District disagrees, but more importantly, the Supreme Court had made clear that student matters

are the sorts of decisions to which the courts should defer to school officials:

> It is not the role of the federal courts to set aside decisions of school administrators which
> the court may view as lacking a basis in wisdom or compassion.... § 1983 does not extend
> the right to relitigate in federal court evidentiary questions arising in school disciplinary
> proceedings or the proper construction of school regulations. The system of public
> education that has evolved in this Nation relies necessarily upon the discretion and
> judgment of school administrators and school board members and §1983 was not
> intended to be a vehicle for federal court correction of errors in the exercise of that
> discretion which do not rise to the level of violations of specific constitutional
> guarantees....

*Wood v. Strickland,* 420 U.S. 308, 326 (1975) (citations omitted).   Plaintiff's procedural due

process claim must therefore be dismissed as a matter of law.

**F.     Plaintiff's race and religion claims fail under any theory, because he has not alleged
sufficient facts to suggest a plausible claim that any actions taken against him were
motivated by his race or religion.**

In his FAC, Plaintiff has added claims for race and religious discrimination/ harassment

under a number of theories, including the First Amendment, Title VI (FAC, ¶¶ 149-152); and

Chapters 106 and 110 of the Texas Civil Practice & Remedies Code.   As a procedural matter,

Chapter 106 is inapplicable to this case, because none of the prohibited acts listed in TEX. CIV.

PRAC. & REM. CODE § 106.001(a) apply to this case.   Chapter 110 is inapplicable to this case for

several reasons, including the fact that Plaintiff has not pled that he provided the mandatory notice

of religious discrimination under TEX. CIV. PRAC. & REM. CODE § 110.006(a), nor has he pled facts

that would show that the District somehow substantially burdened his free exercise of religion.

See TEX. CIV. PRAC. & REM. CODE § 110.003(a).   Claims under Chapter 110 would also be barred

by the one-year statute of limitations, *see* TEX. CIV. PRAC. & REM. CODE § 110.007, since Plaintiff

admits that he left school on March 13, 2020 due to COVID (FAC, ¶¶ 117-119), never went back

to school (*id*. at ¶ 124), and he did not seek to add these claims until May 14, 2021.

More importantly, however, there are simply no facts alleged in the FAC that would suggest a plausible claim that any actions taken against Plaintiff were motivated by his race or religion.  Plaintiff's lawsuit has always been about his conservative political beliefs, and simply adding "because of his race" or "because of his religion" to the litany of reasons why he thinks he has been harmed are "naked assertions devoid of further factual enhancement," insufficient to make out a claim. *Twombly*, 550 U.S. at 557.  There are no factual allegations that any District employees took any adverse action against him because of his race or his religion.  Although Plaintiff claims that "B.W. also has a right to entertain and express his religious beliefs as a Christian" (FAC, ¶ 139), there are no factual allegations that Plaintiff ever tried to express any *religious* beliefs, or that he was stopped or otherwise disciplined by any AISD employees for expressing any *religious* beliefs.  In fact, the only factual allegations that seem to involve religion at all is an allegation that in 2018, a student said "Christians should understand Latin" (*id*. at ¶ 40), while another student said, "I don't like that your [sic] forcing your religion on me" (*id*. at ¶ 45), and then several years later, a teacher referenced "White Gospel music."  (*Id*. at ¶ 113.)  There are no allegations that these were ever reported to any AISD administrators, but even if they were, three minor references to religion over a two-plus year period would not support a religious discrimination/harassment claim, under any theory.

While there are a few more factual allegations about race in the FAC, many of them are more political statements *about* race made in Plaintiff's presence (such as the statements about the "evils of the white race in American history" (*see* FAC, ¶ 41; *see also id*. at ¶ 44)), then they were attacks on Plaintiff *because of* his race.  Plaintiff claims that he was called a racist multiple times (*see* FAC, ¶¶ 38, 82, 83, 102, 111), but being called a racist is not the same thing as being discriminated against on the basis of one's race.  *See*, *e.g*., *Rozenfeld v. MTA Bus Co*., 2015 WL 1174768, at *9 (S.D. N.Y. 2015) (not reported) (calling someone a racist is not protected activity

for purposes of Title VII, because "engaging in a name-calling spat with a fellow employee is not a protected activity, even if Plaintiff's insults were designed to protest the co-worker's personal discriminatory views…..")    To the extent Plaintiff is asserting a student-on-student *racial* harassment claim under Title VI, Title VI is construed *in pari matera* with Title IX, *see Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1170 n.12 (11th Cir. 2003), and the race-based allegations made in the FAC do not rise above the level of the "sort of hurtful but immature behavior the Supreme Court has expressly said is not actionable under federal anti-discrimination law." *Estate of Barnwell v. Watson*, 880 F.3d 998, 1006-07 (8th Cir. 2018).  *See also Davis v. Monroe Cnty. Bd. of Educ*., 526 U.S. 629 (1999) ("Damages are not available for simple acts of teasing and namecalling among school children, however, even where these comments target differences in gender.").  Plaintiff alleges that a handful of vague, race-related comments were made by teachers over several years (*see* FAC, ¶¶ 44, 46, 87, 113), but such comments would not amount to a racially hostile environment under Title VI.  *See Silva v. St. Anne Cath. Sch*., 595 F. Supp. 2d 1171, 1186 (D. Kan. 2009) ("[A] few isolated incidents of racial enmity are insufficient to survive summary judgment."); *Maislin v. Tennessee State Univ*., 665 F. Supp. 2d 922, 933 (M.D. Tenn. 2009). As such, Plaintiff's claims for race and religious discrimination and/or harassment should be dismissed, under any theory.

## CONCLUSION AND PRAYER

For the forgoing reasons, Defendant Austin Independent School District requests that this Court immediately dismiss all of Plaintiff's claims. The Defendant further requests that the Court grant it such remedies, both at law and in equity, to which it has shown itself entitled.

Respectfully submitted,

**THOMPSON & HORTON LLP**


By:   /s/ Christopher B. Gilbert
        Christopher B. Gilbert
        State Bar No. 00787535
        Attorney-in-Charge

Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone:    (713) 554-6744
Fax:              (713) 583-7698
cgilbert@thompsonhorton.com

ATTORNEYS FOR DEFENDANT AUSTIN
INDEPENDENT SCHOOL DISTRICT

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing pleading has been served on all counsel of record through the Court's electronic filing system, on May 28, 2021:

Mr. Martin J. Cirkiel
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664

Ms. Kristina Denapolis West
Attorney & Counselor at Law
Center for American Liberty
5100 Buckeystown, Suite 250
Frederick, Maryland 21704

By:   /s/ Christopher B. Gilbert
Christopher B. Gilbert