IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| B.W. A MINOR, BY NEXT FRIENDS M.W. AND B.W., FORMERY KNOWN HEREIN AS JON AISD DOE,<br>　　　　　Plaintiff,<br>v.<br><br>AUSTIN INDEPENDENT SCHOOL DISTRICT,<br>　　　　　Defendant. | §§§§§§§§§§ No. 1:20-CV-00750-LY |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Dkt. #42) and all related briefings. *See* Dkt. #48, #51.[1] After reviewing the entire case file, relevant case law, and determining a hearing is not necessary, the undersigned issues the following Report and Recommendation to the District Court.

**I. BACKGROUND**

Proceeding by and through his next friend parents, Plaintiff B.W. brings the instant suit against Defendant Austin Independent School District ("AISD") alleging that B.W. was impermissibly discriminated against, harassed, and physically and verbally assaulted by his teachers and fellow students at Austin High School on account of his political beliefs, religion, and race. *See generally* Dkt. #41.

---

[1] This motion was referred by United States District Judge Lee Yeakel to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

In his Fourth Amended Complaint ("FAC"), B.W. describes himself and his family as "Caucasian, devout Christians, and Republicans." Dkt. #41 at ¶ 26. According to B.W., beginning in middle school and continuing during his time at Austin High School, B.W. has been the victim of verbal and physical abuse by other students as well as AISD staff members because of his conservative political views, Christian religion, and his race. *Id.* at ¶¶ 28-123.

Per the FAC, the alleged bullying and harassment began on or about October 13, 2017, after B.W. wore a MAGA (*Make America Great Again*) hat on a middle school field trip and "[a]lmost immediately B.W. experienced an attitudinal change by staff and other students from friendly and inviting to cold and hostile." *Id.* at ¶ 28. After "a number of other incidents of concern," B.W.'s parents met with AISD administrators, "to address concerns that B.W. was becoming an object of derision because of his political beliefs." *Id.* at ¶ 30. At the meeting, B.W.'s parents made suggestions on how the school could better support "diversity of thought." *Id.* at ¶¶ 31-32. The FAC indicates that these suggestions were never implemented, and instead there was "an increase in verbal attacks, vitriol, hatred and overall disgust aimed toward B.W. on almost a daily basis and always because of his political allegiance to President Trump." *Id.* at ¶ 32.

The FAC goes on to allege that beginning in spring of 2018, "B.W. was not only ostracized for being a Republican, but a broader stereotype about being a Trump supporter, Caucasian, and a Christian began to emerge." *Id.* at ¶ 38. B.W. cites various examples, such as an incident during Latin class where "a student made fun of B.W. for being a Christian, saying 'Ah, Christians should understand Latin,'" or another incident during band class in which "two students repeatedly harassed B.W. for being Caucasian by repeating the evils of the white race in American history." *Id.* at ¶¶ 40-41. He also asserts that AISD administrators and teachers "participated in this stereotypical think as well," alleging for example that an AISD principal once "saw B.W. listening

2

to music with his ear buds in and walked up to him, yanked one ear bud out of his ear and stated sarcastically, 'Are you listening to Dixie?'" in front of other students, leaving B.W. "humiliated." *Id.* at ¶ 42.

On September 21, 2018, B.W. and his parents filed a grievance (the Grievance) with the AISD Board detailing, among other things, the above complained of incidents and the alleged lack of response by the school administrators and teachers. *Id.* at ¶ 70. A Level I Conference was convened, AISD provided its Level I Response, and on December 7, 2018, the Austin High School Assistant Principal provided a written response of the Level I findings indicating his finding that there had been no teacher bias or harassment. *Id*. at ¶¶ 80-85.

Even after filing the Grievance, B.W. alleges the hostile educational environment continued, identifying several other alleged occurrences of harassment and bullying against him by students and AISD staff. *See id*. at ¶ 74 (including as an example an incident in which B.W. was allegedly insulted for wearing a Ted Cruz shirt and kicked by other students); *see also, e.g., id*. at ¶¶ 87-89; *id*. at ¶ 102 (alleging that "students called [B.W.] a racist daily, he was 'flicked off' daily, and also cussed at daily," noting that "[m]uch of the time it was in front of a teacher, but no teacher ever intervened.").

On January 22, 2019, B.W. and his family filed a Second Grievance, which "specifically pointed out that B.W. has a constitutional right to political free speech, which was being chilled by the ongoing bullying and harassment" by students and teachers. *Id.* at ¶ 90. The Second Grievance further asserted that despite numerous conferences with AISD administrators and teachers, there had been no resolution of the bullying and harassment against B.W. *Id.* The Second Grievance also contained an addendum "that specifically notes the violations of B.W.'s Constitutional Rights, the 1st and 14th Amendments, the Equal Protection and Due Process

Clauses and Sex Discrimination pursuant to Title IX." *Id*. However, B.W. alleges the Second Grievance was never forwarded to the AISD Superintendent or the Title VI Coordinator, "even though this complaint explicitly makes claims that fall under each's ambit." *Id.*

On or about February 5, 2019, B.W. alleges he was physically assaulted by another student. *Id*. at ¶ 92.[2] The next day B.W. and his parents filed a Third Grievance relaying the details of B.W.'s assault and reiterating that their previous complaints to administrators had been ignored. *Id*. at ¶¶ 93-94. Again, the FAC alleges, the AISD administrator handling B.W.'s Third Grievance "fails to follow School Board Policies and Procedures," and did not forward the complaint to the AISD Superintendent or Title VI Coordinator. *Id*. at ¶ 95.

On June 6, 2019, B.W. and his family filed a Level III Appeal, and on September 16, 2019, the Board convened to hear it. *Id*. at ¶¶ 103-106. The FAC alleges that at this meeting the Board heard about the bullying and harassment that B.W. had experience beginning in middle school and continuing at Austin High School, as well as about the many emails, phone calls, and in-person complaints B.W. and his parents had made to AISD administrators, staff, and teachers over the years. *Id*. at ¶ 106. "It was also reiterated that the District had done virtually nothing to help B.W., and the little that had been done actually made the treatment of B.W. worse, as B.W. subject to not only ongoing harassment, but also retaliation." *Id*. According to the FAC, the Board members ratified all the previous findings by AISD staff. *Id*. at ¶ 109.

Based on the foregoing, B.W.'s FAC asserts the following claims predicated under Section 1983: (1) deprivation of First Amendment rights to free speech and religious, and right to publicly seek redress; (2) deprivation of the right to a public education; (3) deprivation of equal protection rights under the Fourteenth Amendment; and (4) deprivation of procedural due process rights

---

[2] B.W. alleges, without any further detail, that he later found out the student had physically assaulted B.W. "because [he] was white." Dkt. #41 at ¶ 96.

under the Fourteenth Amendment. Dkt. #41 at ¶¶ 138-148.  B.W. also asserts claims of harassment, discrimination, and retaliation based upon his race under Title VI of the Civil Rights Acts of 1964. *Id*. at ¶¶ 149-152.  Lastly, B.W. alleges state law claims of racial and religious discrimination under Chapters 106 and 110 of the Texas Civil Practice & Remedies Code.  *Id.* at ¶¶ 153-154.

## II.  PROCEDURAL HISTORY

B.W. filed his original complaint on July 14, 2020.  Dkt. #1.  After B.W. amended his complaint several times and AISD moved to dismiss each complaint (*see* Dkt. #4, Dkt #12, Dkt. #14, Dkt. #18, Dkt. #20), the undersigned recommended to the district court that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint be granted and that this case be dismissed.  *See* Dkt. #24.  However, after B.W.'s original attorney was forced to withdraw from the case, B.W.'s new counsel sought permission to replead instead of filing Objections to the Recommendation.  *See* Dkt. #33.  The district court granted permission to B.W. to replead (Dkt. #35), and B.W. filed his Third Amended Complaint on May 14, 2021 (*see* Dkt. #36), and his corrected Fourth Amended Complaint ("FAC") on May 26, 2021 (*see* Dkt. #41).

On May 28, 2021, AISD filed the instant Motion to Dismiss, arguing that despite the addition of factual details to the FAC, B.W. has still failed to state a claim upon which relief may be granted.  Dkt. #42.  B.W. filed a response, Dkt. #48, and AISD filed a reply, Dkt. #51.

## III.  LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim

showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The requisite standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### III. ANALYSIS

#### A. Section 1983 Claims

B.W.'s FAC asserts Section 1983 claims against AISD for violation of B.W.'s rights to expression, religion, and public redress under the First Amendment and deprivation of his right to

procedural due process rights and equal protection rights under the Fourteenth Amendment. Dkt. #41 at ¶¶ 138-146.

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. It is well established that a municipality or a local governmental unit, such as an independent school district, is not liable under Section 1983 on the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). That is, "[a] municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (internal citations omitted); *see Monell*, 436 U.S. at 694-95 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). To state a Section 1983 claim against AISD, B.W. must allege facts capable of proving "three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Identification of the "final policymaker" is a question of state law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). "The 'final policymaker' is the official or officials whose decisions are unconstrained by policies imposed by a higher authority." *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1000 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015); *see Beattie v. Madison County School District*, 254 F.3d 595, 603 (5th Cir. 2001) (explaining that a superintendent is not a final policymaker because her

7

decision was subject to review by the school board). Under Texas law the final policy-making authority for a school district is the district's board of trustees. *See* TEXAS EDUC. CODE §§ 11.151 & 11.1511; *see also Rivera v. Houston I.S.D.*, 349 F.3d 244, 247 (5th Cir. 2003) ("Texas law unequivocally delegates to the Board 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'")).

As it did in its previous motions to dismiss, AISD argues that B.W.'s Section 1983 claims should be dismissed because B.W. is impermissibly attempting to hold AISD liable under Section 1983 on a *respondeat superior* theory. *See* Dkt. #42 at 13-18. Specifically, AISD avers that B.W. has still failed to allege any facts showing that an AISD official policy or custom was the moving force behind the alleged constitutional violations. *Id*. The court agrees.

Even assuming that B.W.'s allegations rise to the level of a constitutional violation,[3] in order to hold AISD liable under Section 1983, B.W. "must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Rivera*, 349 F.3d at 247; *see Doe v. Round Rock Indep. Sch. Dist.*, 2019 WL 3891855, at *4 (W.D. Tex. Aug. 19, 2019) ("Plaintiff has failed to assert any facts showing that the RRISD Board of Trustees was the moving force behind any of the actions alleged in this suit and thus has failed to allege a § 1983 claim against RRISD."), *appeal dismissed*, 2019 WL 8359568 (5th Cir.

---

[3] Federal district courts have a limited role in reviewing the decisions of school officials:

> The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and [Section] 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Wood v. Strickland*, 420 U.S. 308, 326 (1975), *rev'd in part on other grounds*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). As one district court stated: "It is a great leap from the principal's office to the federal courthouse, and, in order to invoke federal jurisdiction, plaintiffs are required to demonstrate fact issues indicating not merely that they may have gotten a 'raw deal,' but that their constitutional rights may have been violated." *J.W. v. Desoto Cnty. Sch. Dist.*, No. 2:09-cv-00155-MPM-DAS, 2010 WL 4394059, at *3 (N.D. Miss. Nov. 1, 2010).

Dec. 2, 2019).  For purposes of Section 1983 municipal liability, the Fifth Circuit has clarified that an "official policy" is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under [Section] 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

In the case at bar, B.W. does not allege that the AISD Board of Trustees formally adopted any actual policies or regulations that contributed to his alleged injuries.[4]  In fact, B.W.'s FAC concedes that the Board has adopted proper policies designed to prevent bullying and harassment of students based on issues such as race or religion, as well as on exercise of free speech.  *See* Dkt. #41 at ¶¶ 21-25.  The FAC asserts that despite these policies, AISD had an "actual practice and custom" of failing to follow its own proper policies, arguing that the administrators and teachers with whom B.W. interacted failed to follow those policies.  *Id*. at ¶ 137.  It is true that Section 1983 liability may be imposed where a plaintiff demonstrates a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal

---

[4] To the extent B.W. is attempting to allege that the Board's denial of his Grievance at the September 16, 2019 Board meeting constitutes an "official policy" of the Board, the undersigned has already rejected that theory. *See* Dkt. #24 at 11-12. The FAC adds no significant details relating to the Board meeting, and the court reaffirms its determination that the Board's denial of B.W.'s Grievance does not constitute an official policy for the purposes of Section 1983.

9

policy," *see Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), however, B.W. has failed to do so in this case.

The FAC does not plead factual allegations from which the court could reasonably infer that there was a pattern of misconduct involving similar acts. *See Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 169 (5th Cir. 2010) ("A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct."). Nor does B.W. allege a pattern with any level of specificity. *See Peterson*, 588 F.3d at 851 ("[a] pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question") (internal citations omitted). Importantly, "[i]solated violations, are not the persistent, often repeated, constant violations, that constitute custom and policy" as required for Section 1983 liability. *Bennett*, 728 F.2d at 768 n.3. The FAC does not allege that any other students were treated in a similar fashion because of an alleged custom of practice of disregarding AISD policies, nor any other facts that would plausibly suggest a pattern of behavior. Accordingly, B.W.'s custom and practice argument fails.

The FAC also attempts to hold AISD liable under Section 1983 based on B.W.'s allegations that AISD failed to properly train and/or supervise its staff. *See* Dkt. #41 at ¶¶ 147-148. To impose Section 1983 liability under a theory of failure to train or failure to supervise, B.W. must show three things: (1) the training or hiring procedures of the Board were inadequate; (2) the Board was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the B.W.'s injury. *See Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). Further, he must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [the Board] can

reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). In other words, the failure to train must have been an intentional choice by the Board, not a mere oversight. Here, there are simply no facts indicating that the Board was aware of any alleged custom or failure to train, much less that the Board intentionally disregarded such a need. On the contrary, B.W.'s FAC repeatedly alleges that AISD staff failed to report B.W.'s complaints to the District Superintendent and Board. *See* Dkt. #41 at ¶¶ 55, 90, 94, 128. Accordingly, B.W.'s failure to train/failure to supervise theory of liability is unsupported by the FAC and should be dismissed.

In sum, the allegations in B.W.'s FAC fail to allege an official policy that was the moving force behind the alleged violations of his constitutional rights, and thus B.W. has failed to plead facts upon which AISD could be found liable under Section 1983. *See Iqbal*, 556 U.S. at 678; *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (to proceed beyond the pleading stage, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts"); *see also Davis v. Austin Indep. Sch. Dist.*, 1:20-CV-353-LY, 2020 WL 6434853, at *7 (W.D. Tex. Nov. 2, 2020) (finding the plaintiff had failed to assert any facts showing an official policy that was the moving force behind the actions alleged in the suit and thus had failed to allege a Section 1983 claim against AISD). Consequently, the undersigned recommends that AISD's Motion to Dismiss (Dkt. #42) be **GRANTED** so far as it seeks the **DISMISSAL** of B.W.'s Section 1983 claims.

    **B.**    **Title VI Claims**

In his FAC, B.W. adds new claims of racial discrimination and harassment under Title VI. *See* Dkt. #41 at ¶¶ 149-152. Under Title VI of the Civil Rights Acts of 1964, a District may be held liable for claims arising from student-on-student harassment if: "(1) the harassment was 'so

severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school' (a racially hostile environment), and the district (2) had actual knowledge, (3) had "control over the harasser and the environment in which the harassment occurs," and (4) was deliberately indifferent." *Fennell v. Marion Independent School District*, 804 F.3rd 398, 408 (5th Cir. 2015) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644 (1999)).

AISD argues B.W.'s Title VI claims should be dismissed because B.W. has failed to plead factual allegations to support his claim that the harassment he suffered from other students was because of his race, as opposed to B.W.'s political views. Dkt. #42 at 25-26. Indeed, the few allegations that appear to be racially-related are "more political statements about race made in B.W.'s presence" (such as the statements about the "evils of the white race in American history" (*see* Dkt. $41 at ¶ 41, ¶ 44), then they were attacks on B.W. because of his race. *See id*. at 25.

Moreover, the FAC only alleges a handful of vaguely race-related comments that span more than two years at two different schools. These few isolated incidents do not amount to the "severe, pervasive, and objectively offensive" requirement for a race-based harassment claim under Title VI. *See Davis*, 526 U.S. at 650; *see also Sanches v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

B.W.'s Title VI retaliation claim likewise is insufficient to survive AISD's motion to dismiss. B.W.'s allegation that other students and AISD staff retaliated against him by bullying and harassing him after he filed complaints is unsupported by the pleadings. Significantly, B.W.'s FAC contains no allegations that other students or staff were ever made aware of the fact that B.W. filed any grievances. Without any factual allegations that the students or staff members who allegedly engaged in retaliatory harassment actually had knowledge of the fact B.W. had filed

grievances, B.W. cannot establish the causal link necessary to hold AISD liable under Title XI. *See Balakrishnan v. Bd. of Supervisors*, 2011 WL 6003312, at *4 (5th Cir. 2011) ("An employer cannot engage in a retaliatory action if at the time of the alleged action it does not know about an employee's protected conduct."); *Walker v. Geithner*, 400 Fed.Appx. 914, 917 (5th Cir. 2010) ("Walker cannot establish a prima facie case of retaliation, because there is no evidence that his employers were aware of his protected activity, so there is no causal link."); *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) ("In order to establish the causal link between the protected conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity.")

In sum, B.W. has failed to plead factual allegations to plausibly give rise to his claims of racial discrimination or retaliation under Title VI. Accordingly, AISD's motion should be granted as to B.W.'s Title VI racial discrimination and retaliation claims.

**D.    State Law Claims**

In addition to his federal law claims, B.W.'s FAC alleges state-law claims of racial and religious discrimination under Chapters 106 and 110 of the Texas Civil Practice & Remedies Code. Dkt. #42 at ¶¶ 153-154. In its Motion to Dismiss, AISD argues that both claims must be dismissed because neither Chapter 106 nor Chapter 110 are applicable to this case. Dkt. # 42 at 18. AISD further asserts that B.W.'s claims under Chapter 110 would also be barred by the one-year statute of limitations. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 110.007. B.W.'s fails to address AISD's arguments related to his state-law claims.

As AISD asserts in its motion, B.W.'s Chapter 106 claim fails because none of the prohibited acts listed in TEX. CIV. PRAC. & REM. CODE § 106.001(a) apply to this case. His claim

under Chapter 110 also must be dismissed because, as AISD notes, it is barred by the one-year statute of limitations—B.W. did not add the Chapter 110 claim until he filed his FAC on May 14, 2021, more than one-year after B.W. left school on March 13, 2020 (Dkt. #41 at 117-124 ). *See* TEX. CIV. PRAC. & REM. CODE § 110.007.  Accordingly, AISD's Motion to Dismiss the state-law claims asserted against it should be **GRANTED**.

## IV.  RECOMMENDATIONS

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Dkt. #42) be **GRANTED** and that all of B.W.'s claims be **DISMISSED**.  If the above recommendations are adopted, this lawsuit will effectively be dismissed.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel

## V.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED January 28, 2022.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE